May it please the Court. My name is Leif Thompson. I'm here with Matt Sonicson. We are legal interns from the University of Idaho Legal Aid Clinic, and we're supervised by Professor Maureen Laughlin. We'd like to reserve one minute for rebuttal, and we represent Mr. Clint Miles in this appeal. We're here today to present two issues before the Court. I will present the first issue and Mr. Sonicson will present the second. The first issue is that the district court erred in granting summary judgment with respect to Defendant Jones because a material issue of fact remains about whether Defendant Jones acted outside the scope of his employment. The second issue is that the district court erred in … The issue of material fact that a fact finder needs to resolve. The issue of material fact is Defendant Jones' mens rea with respect to why he denied providing Mr. Miles with dentures for 17 months. He made statements to Mr. Miles … Why can't we conclude that even if we accept your argument that that is a purely evil, malicious motive that it nonetheless benefited his employer because the prison didn't have to pay for that period of time? Because benefiting his employer is a completely separate and different scope of employment factor. It is of an act of a kind that the employee was hired to perform. Mens rea is its own separate scope of employment factor. I see. So whenever you … somebody does his job, you are going to create a time issue of fact by saying he was thinking about something else. Yes. If he used his job … If this is a mechanic and he's thinking about going to the movies, then he's not doing his … then he's not being a mechanic. If he was a … if he were a mechanic, Judge Kaczynski, and he intended … and he intended to break somebody's car because he didn't like that person or he was motivated by personal animus, then Oregon courts would require a remand. Because he wouldn't be a mechanic? Because his … I mean, if you're not a mechanic, you don't know how to break that car. You have to be a mechanic to figure out how to wreck it well, right? You know, I wouldn't know how to do it. Yes. Well, his … He may be a bad mechanic, but what case do you rely on that says at that point he's not being a mechanic? The case we would like to direct the Court to is Dryden v. State Occidental Insurance Funds. And in that case, the district court … the appellate court in Oregon remanded entirely on the issue of membrane of the defendant, which was unknown. So your theory is then that if he acts out of personal animus, he is … that's not within the scope of his employment because his subjective mindset somehow takes his otherwise purely dental activities outside the scope of his employment because it's not within his scope to have a personal animus? Is that what the Oregon law means? That's exactly right, Judge Bishop. That's not what you cite in your … in your blue brief. That's not what you say about Dryden in your blue brief. Excuse me? That's not what you say about Dryden in your blue brief. Do you have it? It's on page 10. You cite it on page 10 of the blue brief, and then you cite it on page 3 of the gray brief. Yes. On the … in the blue brief, it's … it's … it just cites the three issues that the Oregon court remanded for mens rea. And Dryden, an insurance investigator, rammed the plaintiff after she discovered him that he was investigating her for insurance fraud, and the issue was why he rammed her. And they decided that he could have acted intentionally, intentionally but with a purpose to at least partially serve his employer or negligently. And the Oregon court remanded to decide the mens rea on that very issue. Let me give you a hypothetical. Suppose that the dentist, in the course of performing dental work on the plaintiff, caused the plaintiff pain. And the plaintiff brings a claim against the Bureau of Prisons alleging that the pain was unnecessary, that the dentist, you know, sadistically made him suffer greater pain than should have been the case. Would it be your position that under those circumstances, we'd have to remand for a factual determination as to what the dentist was thinking when he engaged in the provision of those services? If there are at least some facts to allege to show that the defendant might have been thinking something different other than just motivating … motivated by serving the prison, then yes. Even though he was performing the services that he was hired to perform and that there is necessarily pain that sometimes attends dental procedures, it would be completely improper for a district court to grant summary judgment on this issue. Well, if there are some facts to raise an issue of mens rea, yes, Judge Tolman, they were completely separate factors. And each factor must be met for scope of employment. So summary judgment could never be granted in any case if the plaintiff made an allegation that the actor operated with bad mens rea. Summary judgment, if the plaintiff can point to any facts where there is bad mens rea, we believe that is organ law. Organ law extremely favors … What facts do you have here? The facts we have here is defendant Daniels stated inmate Miles was responsible for losing all of his teeth. And inmate Miles came to the Bureau of Prison with no teeth and no dentures, so clearly it was not important enough for him to get dentures before he came to the system. Well, you don't dispute the fact that he didn't have any teeth or any dentures when he arrived in the custody of the Bureau of Prison, do you? No. I'm not sure I understand organ law. Organ law, at least under its respondeat superior type of cases, says it takes, even under a mixed motive situation, that's enough to bring the employee within the scope of employment. Now you're saying Dryden flips that around and says that if there is anything that is in his mind that is arguably outside the scope, then that takes him outside the scope of employment as to that narrow element. So the trial would then be on whether or not he did this for personal animus. And then if that were the case, he would be outside the scope of his employment. Who would be liable in that case? The organ courts do not decide as a matter of law what is in or outside of the scope of employment, but they strongly favor jury trials in almost every instance. No, I understand. But what's the jury trial about? It's about what Defendant Jones' subjective intentions are. Okay. So they hear the evidence that he was a dentist, but when he did the act that he did in denying the dentures, he was doing it because he had this personal animus. And what, do they find him liable? Is that because he's not acting within the scope of employment? Or would you then be arguing now that prison is liable, his employer is liable, because he was within the scope of his employment? Could you repeat the question? Well, I'm trying to understand how you segment this. You're saying that he was outside the scope of his employment, therefore it should go to a jury. The jury then gets your argument, evidence. They conclude that Jones, the dentist, when he denied the dentures, was acting outside the scope of employment. Who's liable, then, for any damages? Jones? Yes, I believe. Okay. So it's just Jones. It wouldn't be the employer is what you're saying. The employer would not be liable for that act because you have established it was outside the scope of employment. Therefore, the employer would no longer be liable because it's not within the scope of his employment. Well, I'm not sure about the relationship that the Federal government has with Defendant Jones. Well, they wouldn't be liable. They may not be liable. Okay. So it's just Jones individually. This is what the lawsuit's about. Well, the Bivens claim is against Defendant Jones individually. Personally.  And every any relationship between him and the government is going to be a remuneration. But you'll understand that if you're representing somebody in court, it's a hollow victory to get a judgment of damages against a judgment proved for impecunious defendant. You often try to get it against the deeper pocket. Yes. And I just want to know if you think you still have a deep pocket. Will you save the rest of your time for rebuttal? I would like to cede the rest of my time for Mr. Sonicson. Thank you. 15 seconds. Your Honor, I'll be very brief on this so that I can save some time for rebuttal. The crucial issue in this case is that the district court erred in granting summary judgment because the defendants exhibited You're talking now about the warden, right? Both of them, Your Honor. Oh, you're talking about both. Okay. Yes, both Jones and Daniels both exhibited deliberate indifference. I see that my time has expired. We'll give you a minute, but that's what happens when you lead with your weak issue. Let me help you focus. I'm trying to understand why in the October memorandum, that response to your client's complaint, why there was any evidence of deliberate indifference because he addressed specifically the concerns. He said, Miles is saying, I've lost all this weight. The warden comes back and says, wait a minute, no, you've only lost three pounds. He says, I have these digestive problems. My gums are somewhat abraded by this. But my complaint, the manifestations of my discomfort are intestinal disorder and constipation. The warden says, you know, you haven't gone to sick call. Go to sick call. We have medical treatments for that. So why is that deliberate indifference? Your Honor, it's deliberately indifference because Defendant Daniels saw a condition that, as the Seventh Circuit has said, was so obvious that even a layperson could easily recognize the necessity. He says he can chew soft foods. We've got plenty of soft foods in every meal. And so no harm, no harm. Your Honor, the issue – You remember that he said that? Yes. How did he remember that? Your Honor, the issue isn't the soft foods that were provided to Mr. Miles. The issue is that the treatment that was necessary for him to be whole again was not provided to him for – But he never availed him, besides the soft foods. He never went to sick call. So apparently his symptoms were not so severe that he required any medical care. Your Honor – That's the only conclusion I can draw from the fact that he never reported to sick call. He did go to sick call at least once and possibly twice. And not only that, but he also complained several times not only to Defendant Daniels but to the Bureau of Prisons. So your theory is that his real problem was dentures. To be, as you say, made whole, he was entitled to jump the list to get his dentures over everybody else that was on the dental call waiting list, and therefore the Warden is indifferent for not having jumped him up on the top of the list? Not at all, Your Honor. We aren't arguing that he needs to be jumped on the list. We are simply arguing that the 17-month delay accompanied by his chronic pain, gastrointestinal problems, and other issues was too long. If we disagreed with your – the second part of your statement that there was severe pain based on the fact that he doesn't – the record doesn't seem to show that he pursued it, would you still have a claim because he had to wait for 17 months? Yes, Your Honor, because it's still a serious medical need. So just the delay alone – How is it a serious medical need? Your Honor, it's a serious medical need because, as we said – You've already given away or we've assumed away the stomach pains. Well, stomach pains are a serious condition. The issue is the – Did you understand just Tom's question? No. Could you – It's a very simple question. Is delay alone sufficient in your position? No, sir. Establish deliberate indifference. No, sir. And we aren't arguing that this is delay alone. As this Court held within Shapely, delay without more is not deliberate. Thank you. Thank you, sir. May it please the Court. Kelly Zusman. I'm appearing on behalf of the Federal Defendant. Your Honors, I think we've got a couple of fairly narrow issues here. Relative to Commander Jones, it's the Public Health Services Act that says that there is to be no Bivens liability. The claim, if any, was under the Federal Tort Claims Act, and Mr. Miles even acknowledged that before the district court when, in his objections to the FNR, he requested permission to file a Federal Tort Claim Act claim but apparently never did so. Bivens liability, Judge Fischer, some of your questions. Under the federal system, it is the individuals who are personally liable. The federal government may, at its option, reimburse that individual, but it's not a guarantee. My question really was trying to sort out the Oregon law of respond to its superior on the one hand, and apparently there the plaintiff is always trying to make the employer liable and arguing that the employee was acting within the scope of employment, even though their employer says, no, he wasn't. Now we have the flip side. So Oregon law does what under those circumstances? Well, I'm not aware of any Oregon case that addresses this flip, if you will. What the Oregon cases say is that it is generally the rule that whether or not when there's an issue about whether someone was within the scope for purposes of establishing vicarious liability or responding at superior, it's generally going to be a jury question. But in all of those cases, the plaintiffs had actually come forward with specific allegations of why they thought those individuals were acting within the scope. And most of the cases involved priests who abused young parishioners. Well, that may be, but in any event, if they've come forward with specific evidence of personal animus, which is that Jones thought this guy was the cause of his own problem, and they weren't about, they didn't have the resources, why should they waste time on him? His problem, he didn't have dentures, and he created the problem by losing them or loosing them, whichever case. So there is some specificity there. Are you suggesting that Oregon law would then send that issue? If you accept that that is enough specificity, that they would send that issue to the jury then to decide whether he was inside or outside the scope of employment? No, not in this circumstance and for this reason. The memo that they rely upon from Commander Jones was a single memo. That's all they take. It's summary judgment. It's whether there's a triable issue of fact. It's his own memo. It's his own words. It is his own words. And in his own words, he recounts what were the accurate facts. And I think it's an acknowledgment on his behalf that, for example, if Mr. Miles had lost all of his teeth while he was at Sheridan, then they would, in fact, have a higher obligation to ensure that his medical needs were met. Why? Well, because they're the custodian. They are responsible. Well, they're the custodian of him now. Not anymore. Well, they were at the time of all of this. They were, but there's no presumption that someone who has no teeth has to have dentures in order to maintain a minimum level of existence. And the cases that are relied upon in the reply, Wynn and Farrow, Wynn, for one thing, involved a dismissal, not a summary judgment. And on Farrow, I think one of the key pieces here, I'm skipping back over to Daniels now, but one of the key pieces in distinguishing the other cases as to Ward and Daniels is that he's an administrator. He's not part of the medical staff. And a lot of the cases, finding that there was a genuine issue, relate to medical staff. That may be, but the warden was the one that wrote the memo and made the medical statements about his condition. He may have relied on others. I understand that. But he also made a he was the one who asserted what the medical rationale was for not giving him the dentures, essentially on demand, or at least on some greater priority. Well, what Ward and Daniels did is precisely what this Court said he was supposed to do in the Jett case, which is acknowledge the complaint, investigate it to the extent that a layperson acting as an administrator is supposed to investigate it, determine that, in fact, his medical staff is taking care of the issue. He did the research that he was supposed to do as the warden and determined that, in fact, Mr. Miles' complaints were without foundation, that his claim that he had lost 14 pounds was simply false. All the warden had to do was check the intake records to determine that, in fact, he'd only lost 3 pounds since arriving at the institution, that there was no indication of any nutritional deficit or any life-threatening issue that would have required him to bump him up onto the list. Thank you. Thank you, Your Honor. Would you like a minute for rebuttal? Yes, Your Honor. Your Honor, the Daniels investigation is still a material issue of fact here because there are facts here that delineate whether or not Mr. Miles had severe problems as a result of his lack of dentures. Even though the record of the ---- Name one. The gastrointestinal issues that he was suffering as a result of his lack of dentures. He had nine meals, as he said, sitting in his gut for days at a time that he couldn't defecate for that reason. But never went to sick call to address that need. Your Honor, even though ---- All we have is his bare allegation that that was the case. There's no corroborating evidence to show. Yes, and that's the kind of thing that's hard to believe, you know, that you can count the number of meals you've got sitting in your gut. I mean, that's a pretty neat trick if your client can really do that. Your Honor, even though ---- I think it's a process of elimination, isn't it? That is true. The underlying issue, though, Your Honor, as the Seventh Circuit and as Farrow both looked at is the significance of the complaints of the inmate and his alleged harm as a result of it. Even though we only have him going to sick call once, the issue still remains. But in those other cases, they weren't even meeting the requirement for soft foods. And here the warden did that. The prison apparently provided that. So you're really left with his subjective complaint, which is not corroborated by any other evidence, and the delay. Along with his allegations of pain, Your Honor. That's what I'm saying, his subjective allegations. Okay. I think we understand. Okay. Thank you. The case is filed. You will stand submitted. Thank you.
judges: Kozinski, Fisher, Tallman